ORDERED.

Dated: April 2, 2012



Eileen W. Hollowell, Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MARIE ANTOINETTE GRIJALVA,<br><br>        Debtor.<br><br>EARL GELLER, as Trustee of the EARL GELLER FAMILY TRUST U/T/A DATED JULY 29, 1998 and EARL    GELLER and JOYCE GELLER, as Trustees of the GELLER FAMILY TRUST DATED 7/31/03,<br><br>        Movants,<br>vs.<br><br>MARIE ANTOINETTE GRIJALVA and DIANNE C. KERNS, Trustee,<br><br>        Respondents. | Chapter 13<br><br>Case No. 4:11-bk-25386-EWH<br><br><br><br><br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Marie Antoinette Grijalva ("Debtor") proposes to modify the first-position lien on her principal residence in her Amended Chapter 13 Plan ("the Amended Plan"). For the reasons explained in the balance of this opinion, such treatment is permitted pursuant to 11 U.S.C. § 1322(c)(2) and § 1325(a).[1]

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules." The local bankruptcy rules for the District of Arizona are referred to as "Local Rules."

## II. FACTUAL AND PROCEDURAL HISTORY

Debtor filed a Chapter 13 voluntary petition on September 2, 2011. On October 6, 2011, Earl Geller timely filed two proofs of claims: Claim 3, for $378,447.04, as trustee of the Earl Geller Family Trust, and Claim 4, for $283,533.02, with Joyce Geller (collectively "Geller"). Claim 3 is secured by a first lien on Debtor's residence ("the Residence"). Claim 4 is secured by a second lien on the Residence. Each claim is evidence by a short-term note ("the Notes") in the original principal amount of $37,500. Interest accrued on the Notes at over 11%. The Notes matured and became fully due and payable on March 30, 2010, five months before Debtor filed for protection under Chapter 13. Debtor asserts that the Residence is worth $37,500. Geller has not obtained an appraisal of the Residence.

On November 16, 2011, Debtor filed the Amended Plan, which proposes to pay, pursuant to § 1322(c), a total of $37,500 at 8% interest in 58 monthly payments of $760.37 on Claim 3.[2] Geller objected to the Amended Plan on November 22, 2011, arguing that the plan violates 11 U.S.C. § 1322(b)(2), which prohibits modifying the value of a claim secured solely by a debtor's principal residence. At a hearing on December 13, 2011, the Court asked Debtor and Movants to brief whether modification of a short-term mortgage secured by a debtor's principal residence is permitted under § 1322(c)(2). Both parties submitted briefs on January 17, 2012, and the Court heard oral arguments on February 2, 2012.

Geller argues that such a modification violates § 1322(b) and is inconsistent with Congressional intent. Debtor responds that § 1322(c)(2) should be read in conjunction with § 1325(a)(5) to allow modification in the limited circumstances where a claim has matured either pre- or post-petition and the claim is paid in full over the chapter 13 term.

---

[2] Although not completely clear from the briefs or the record, for purposes of this Memorandum the Court assumes the Debtor will seek to avoid Claim 4 pursuant to § 506(d). Therefore, this Memorandum addresses Claim 3.

2

Case 4:11-bk-25386-SHG   Doc 46   Filed 04/02/12   Entered 04/02/12 14:50:07   Desc
Main Document - Memorandum/Opinion   Page 2 of 8

## III. ISSUE

Does § 1322(c)(2) permit a chapter 13 debtor to bifurcate an under-secured short-term mortgage and "cram down" the unsecured portion of the mortgage pursuant to § 1325(a)(5)?

## IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (K), and (O).

## V. DISCUSSION

1. Meaning of 11 U.S.C. § 1322(c)(2)

**A. Statutory Rules of Construction**

An enduring canon of statutory construction instructs that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L. Ed. 2d 391 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Id. at 254 (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L. Ed. 2d 633 (1981)).

The Ninth Circuit has further explained that when construing a statute, a court "must consider first 'whether Congress has directly spoken to the precise question at issue.'" Cal. ex rel. Lockyer v. FERC, 383 F.3d 1006, 1016 (9th Cir. 2007) (quoting Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 125-26, 120 S.Ct. 1291, 146 L. Ed. 2d 121 (2000)). "'If Congress has done so, the inquiry is at an end; the court must give effect to the unambiguously expressed intent of Congress.'" Cal. ex rel. Lockyer, 383 F.3d at 1016 (quoting Brown & Williamson, 529 U.S. at 132 (internal quotation and citation omitted)). "'…[W]hen we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading

3

the relevant statutory provisions as a whole.'" United States v. Hanousek, 176 F.3d 1116, 1120 (9th Cir. 1999) (quoting Carpenters Health & Welfare Trust Funds v. Robertson (In re Rufener Constr.), 53 F.3d 1064, 1067 (9th Cir. 1995)).

**B. Applying the Rules of Statutory Construction to 11 U.S.C. §§ 1322(b)(2) and (c)(2)**

Section 1322 sets out what must be included in a Chapter 13 plan. Subsection (b)(2) permits a plan to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims" (emphasis added). The italicized language is the graveman of Geller's argument that Debtor's plan includes an impermissible modification of the secured creditor's rights. However, §1322(b)(2) is not absolute.

Section 1322(b) is "[s]ubject to subsections (a) and (c) of this section…." Subsection (c) includes the phrase "[N]otwithstanding subsection (b)(2) and applicable nonbankruptcy law…." The prefatory word "notwithstanding" is notable. BLACK'S LAW DICTIONARY, 1168 (9th ed. 2009), defines "notwithstanding" as a preposition meaning "despite; in spite of." THE AMERICAN HERITAGE DICTIONARY (5th ed. 2011) defines the preposition "notwithstanding" to mean "in spite of." As a result, to the extent that 11 U.S.C. §§ 1322(b) and (c)(2) conflict, subsection (c)(2) controls and provides in relevant part:

> in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Section 1322(c)(2), therefore, permits modification of a claim secured by a principal residence in the limited circumstance where: (1) the obligation matures and becomes due in full before or during the Chapter 13 plan term, and (2) the Plan complies with § 1325(a)(5). Here,

4

the Plan complies with § 1325(a)(5)(B) because Geller retains the first lien until Debtor's discharge, and the value of the Residence, as of the effective date, is not less than the allowed amount of his claim.[3]

2. Case Law Supports Modification

There is no controlling authority in the Ninth Circuit addressing whether § 1322(c)(2) allows a debtor to cram down a short-term debt secured by a debtor's principal residence. However, cases from other jurisdictions support such a result. In <u>Am. Gen. Fin., Inc. v. Paschen (In re Paschen)</u>, 296 F.3d 1203, 1207 (11th Cir. 2002), the Eleventh Circuit conducted a statutory analysis explaining that the phrase "notwithstanding subsection (b)(2)" was a plain statement that made (b)(2)'s modification prohibition inapplicable "to the class of claims that fall under § 1322(c)(2)." The <u>Paschen</u> court noted that the Sixth Circuit B.A.P. and bankruptcy courts in California and Minnesota had reached the same conclusion. <u>Id.</u>; <u>see also</u> <u>In re Eubanks</u>, 219 B.R. 468, 470 (B.A.P. 6th Cir. 1998) ("The introductory phrase, 'notwithstanding subsection (b)(2)' clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section") (internal citation omitted); <u>In re Bagne</u>, 219 B.R. 272, 277 (Bankr. E.D. Cal. 1998) ("Plainly, this [prefatory] language instructs the court to disregard § 1322(b)(2)"); <u>In re Mattson</u>, 210 B.R. 157, 160 (Bankr. D. Minn. 1997) (holding that the prefatory phrase "notwithstanding" means that "we are…to ignore subsection (b)(2)…to the extent that it is inconsistent with the language that follows").

The best-known case to consider subsections 1322(b)(2) and (c)(2) is <u>In re Young</u>, 199 B.R. 643 (Bankr. E.D. Tenn. 1996). As in the previously cited cases, the court in <u>In re Young</u> conducted an analysis of the statutory language and found that § 1322(c)(2) unambiguously exempts certain mortgages from the protection against modification offered by § 1322(b)(2). <u>In</u>

---

[3] The only value placed on the Residence, to date, is $37,500 as asserted in the Amended Plan.

5

Case 4:11-bk-25386-SHG   Doc 46   Filed 04/02/12   Entered 04/02/12 14:50:07   Desc
Main Document - Memorandum/Opinion    Page 5 of 8

re Young, 199 B.R. at 646-47. It also concluded that two Supreme Court cases upon which Geller relies are distinguishable. First, In re Young observed that Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992)—a case which held that a Chapter 7 debtor cannot rely on § 506(d) to modify a lien—is expressly limited to Chapter 7 cases. In re Young, 199 B.R. at 650. Numerous courts have rejected Dewsnup's applicability in reorganization cases, as lien modification and stripping is critical to reorganization. Id. at 650-51 (citing thirteen cases from various jurisdictions). Second, the Young court held that permitting the modification that Debtor seeks here is not inconsistent with Nobelman v. Am. Sav. Bank, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993), because Nobelman was premised solely on a reading of § 1322(b)(2), while subsection (c)(2) was added to the Bankruptcy Code a year later. According to the Young court, the effect of § 1322(c)(2) was to distinguish short-term balloon mortgages from more traditional long-term mortgages. Id. at 651-52. As noted in a leading treatise on Chapter 13 practice:

> On its face, § 1322(c)(2) is an exception to the antimodification provision of § 1322(b)(2). Any home mortgage within its reach can be modified by a Chapter 13 plan in the usual ways permitted by the Bankruptcy Code—including bifurcation and cramdown, consistent with § 1325(a)(5). This interpretation of § 1322(c)(2) renders § 1322(b)(2) and Nobelman inapplicable to home mortgages on which the "last payment on the original payment schedule" is due before the final payment under the plan. This outcome was convincingly defended in In re Young and has been embraced by a majority of courts, including the U.S. Court of Appeals for the Eleventh Circuit.

Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4th Edition, § 143.1, at ¶ 13, Sec. Rev. June 2, 2004.

Geller argues that before the Bankruptcy Reform Act of 1994 ("the Reform Act") added § 1322(c)(2), the Bankruptcy Code prohibited the modification of an under-secured home loan. Geller also argues that because the legislative history of the Reform Act does not mention that Congress intended to overrule Nobelman, it is unlikely that Congress intended for § 1322(c)(2) to permit modification of short-term mortgages. Geller relies heavily on Witt v. United Cos.

6

Lending Corp. (In re Witt), 113 F.3d 508 (4th Cir. 1997), in support of these arguments.

In Witt, the Fourth Circuit analyzed facts nearly identical to those of this case: a secured creditor with a first-position lien on debtors' principal residence objected to the bifurcation of its claim. The Witt court found that the language in § 1322(c)(2)—"payment of the claim as modified"—was ambiguous with regard to whether "modification" applied to "claim" or "payment." In re Witt, 113 F.3d at 511. If modification applied to "claim", then bifurcation would be permissible. Id. If modification applied to "payment", then a debtor could only change the payment schedule, but not the total amount to be paid. Id. The Fourth Circuit concluded that modification applied to "payment", but as just one possible outcome. Therefore, the statute was deemed ambiguous, and the Fourth Circuit conducted an analysis of § 1322(c)(2)'s supposed ambiguity. Id. at 511-12. After reviewing the legislative history, Witt held that cramdown was not permissible under § 1322(c)(2). Id. at 513-14.

The Eleventh Circuit rejected Witt in Paschen:

> The Witt court's view that the phrase "as modified" modifies "payment," rather than "claim," is a grammatically strained reading…It contradicts the rule of the last antecedent, an accepted canon of statutory construction which provides that when construing statutes, "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote."

In re Paschen, 296 F.3d at 1208-09.

## VI. **CONCLUSION**

Accordingly, the Court will enter an order this date that permits Debtor to bifurcate Claim 3 in the Amended Plan.[4]

Dated and signed above.

---

[4] Geller may still seek a valuation hearing on the Residence and the Debtor must still move to avoid Geller's second lien (Claim 4). Lien avoidance may not be accomplished through plan confirmation.

7

To be NOTICED by the Bankruptcy Noticing Center
("BNC") to the following:

Cheryl K. Copperstone
Ryan Cliff Anderson
Law Office of Cheryl K. Copperstone
7211 N. Camino de la Cruz
Tucson, AZ 85741

Ronald M. Horwitz
Janessa E. Koenig
Jaburg & Wilk, P.C.
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012

Dianne C. Kerns
7320 N. La Cholla #154 PMB 413
Tucson, AZ 85741-2305

Office of the U.S. Trustee
230 N. First Ave., Suite 204
Phoenix, AZ 85003

8

Case 4:11-bk-25386-SHG    Doc 46    Filed 04/02/12    Entered 04/02/12 14:50:07    Desc
Main Document - Memorandum/Opinion    Page 8 of 8